UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GARY DURAND,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA, *et al.*,

    Defendants.

Civil Action No. 13-1346 (CKK)

MEMORANDUM OPINION
(May 1, 2014)

Plaintiff Gary Durand has filed suit against Defendants the District of Columbia, Cathy Lanier, Michael Anzallo, Christopher Lojacono, Samuel Golway, Leon Epps, Christopher Cummings, Michael Eldridge, Brad Wagner, and Diana Haines-Walton, alleging violations of the District of Columbia Whistleblower Protection Act and the First Amendment in relation to disciplinary proceedings against Plaintiff as a member of the Metropolitan Police Department. Presently before the Court are Plaintiff's [6] Motion Under 28 U.S.C. § 1447(c) to Remand Case Back to the Superior Court of the District of Columbia and Defendants' [9] Motion to Dismiss. Upon consideration of the pleadings[1], the relevant legal authorities, and the record as a whole, the Court dismisses Plaintiff's First Amendment claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, Defendants' [9] Motion to Dismiss is GRANTED IN PART.

---

[1] Joint Notice of Removal, ECF No. [1]; Compl., ECF No. [1-1]; Pl.'s Mot. Under 28 U.S.C. § 1447(c) to Remand Case Back to the Superior Court of the District of Columbia, ECF No. [6] ("Pl.'s Mot."); Defs.' Opp'n to Pl.'s Mot. to Remand, ECF No. [8] ("Defs.' Opp'n"); Defs.' Mot. to Dismiss, ECF No. [9] ("Defs.' MTD"); Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. [11]; Mem. of P. & A. in Supp. of Pl.'s Opp'n to Mot. to Dismiss, ECF No. [11-1] ("Pl.'s Opp'n Mem."); Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss, ECF No. [14] ("Defs.' Reply"). In an exercise of its discretion, the Court finds that holding oral argument on the instant motions would not be of assistance in rendering a decision. See LCvR 7(f).

Given the Court dismissal of Plaintiff's First Amendment claims, there is no longer a federal question in this case. Plaintiff's [6] Motion to Remand is therefore GRANTED, and this case is remanded to the Superior Court of the District of Columbia.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the Plaintiff's Complaint and must be accepted as true for purposes of a motion to dismiss. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Plaintiff is a Lieutenant in the Metropolitan Police Department ("MPD"). Compl. ¶ 3. Plaintiff has been a member of MPD since 1990 and at the time of the relevant events in this action was assigned to MPD's Fifth District. *Id.* In early February 2012, the manager of a hotel in the Fifth District sent an e-mail to the District's Commander complaining that during the early morning hours of January 30, 2012, five on-duty MPD officers were observed in a hotel conference room playing cards without the knowledge or permission of the hotel. *Id.* ¶ 16-18. MPD opened a formal investigation of the incident which was assigned to Lieutenant Edward Bernat. *Id.* ¶ 17.

On March 14, 2014, Lt. Bernat submitted a report to Captain Marvin Lyons of the Fifth District, sustaining the allegations of neglect of duty against the five officers. *Id.* ¶ 19. Capt. Lyons, believing the officers should be charged with gambling in addition to neglect of duty, directed Lt. Bernat to take a statement from the hotel employee who discovered the officers in the conference room, an individual identified in the Complaint as Ms. Jimenez. *Id.* ¶¶ 19-20. Lt. Bernat asked Plaintiff to take this statement from Jimenez. *Id.* ¶ 20. Along with Lieutenants Timothy Haselden and Patricia Janifer, Plaintiff interviewed Jimenez in the hotel conference room and asked her to provide a written statement. *Id.* ¶ 22. In this statement Jimenez wrote, "I

am come into the Fremont Board Room. Saw officers standing around, eating/drinking at the table. Asked them to leave. They left." *Id.*

On March 21, 2014, Capt. Lyons went to the hotel with Sergeant Randy Griffin. *Id.* ¶ 24. Upon returning to the Fifth District, Capt. Lyons accused Plaintiff and the lieutenants accompanying him of intimidating Jimenez such that she would not mention any gambling by the officers in the hotel. *Id.* Capt. Lyons told Plaintiff that Sgt. Griffin had spoken with Jimenez and that Jimenez had told Sgt. Griffin that she felt intimidated during her interview with the three lieutenants. *Id.* Plaintiff denied intimidating Jimenez. *Id.*

The following day, March 22, 2012, Capt. Lyons and Sgt. Griffin returned to the hotel with Sgt. Brad Wagner, an officer in the Internal Affairs Division ("IAD") of MPD. *Id.* ¶ 25. Wagner interviewed Jimenez who stated that when she entered the room she saw cards, food and money on the table, although she did not actually see any officers playing cards or exchanging money. *Id.* Jimenez told Wagner that she believed the three MPD officers who previously interviewed her did not want her to mention gambling in her statement because she did not actually see anyone playing cards or exchanging money. *Id.* Jimenez further told Wagner that during her interview with Plaintiff and the two other officers, an African-American male did most of the talking. *Id.* Plaintiff and Lt. Haselden are both Caucasian males and Lt. Janifer is an African-American female. *Id.* ¶ 26.

Based on his interview with Jimenez and a subsequent interview of Lt. Janifer, Sgt. Wagner prepared an IAD Report of Investigation. *Id.* ¶¶ 27-28. In this report, Sgt. Wagner accused Plaintiff, Lt. Haselden, and Lt. Janifer of attempting to intimidate Jimenez. *Id.* ¶ 28. Sgt. Wagner did not interview Plaintiff, Lt. Haselden, or Lt. Bernat before issuing this report, and Plaintiff alleges that Wagner knew some of the information provided to him by Jimenez to

3

be incorrect. *Id.* On March 24, 2012, Sgt. Wagner sent his report to Capt. Lyons. *Id.* ¶ 29. Plaintiff alleges that such disclosure to a member of MPD outside of IAD was improper because, pursuant to MPD regulations, policy, and practice, documents prepared by IAD officials during the course of an open investigation are confidential and not to be disseminated outside of IAD. *Id.*

Capt. Lyons left a copy of the report in a folder on Lt. Bernat's chair, along with a note instructing Lt. Bernat to charge the card-playing officers with making false statements, as they denied they had been gambling. *Id.* ¶ 30. Seeing the unsealed folder on Lt. Bernat's chair and thinking it might be a matter requiring his attention, Plaintiff looked at the folder and saw the report prepared by Sgt. Wagner. *Id.* Plaintiff then called Lt. Bernat at home to inform him of the report and forwarded copies of the report and Capt. Lyons' note to Lt. Bernat and Lt. Haselden. *Id.* ¶ 31.

On March 26, 2012, Plaintiff sent two e-mails to the following individuals: Chief of Police Cathy Lanier, Assistant Chief of Police and Head of the Internal Affairs Bureau Michael Anzallo, Cmdr. Christopher Lojacono, Capt. Christopher Cummings, Capt. Lyons, and Sgt. Wagner. *Id.* ¶ 33. In these e-mails, Plaintiff stated that the release of the confidential IAD report to Capt. Lyons along with the allegation of misconduct against the three lieutenants based on the incomplete hearsay contained in the report constituted misconduct by IAD. *Id.*

The following day, March 27, 2012, Capt. Cummings and Lieutenant Samuel Golway, another Internal Affairs officer, questioned Plaintiff about the emails he had sent. *Id.* ¶ 34. Plaintiff again met with Capt. Cummings on May 8, 2012. *Id.* ¶ 35. On July 25, 2012, Plaintiff received two Notices of Proposed Adverse Action. *Id.* ¶ 36. First, Plaintiff was charged with "prejudicial conduct" for opening the folder on Lt. Bernat's chair, forwarding the IAD report to

4

other members of MPD, and sending his complaints to the Chief of Police. *Id*. ¶ 37. Second, Plaintiff was charged with "conduct unbecoming" an officer for allegedly improperly intimidating Jimenez, as well as "Inefficiency." *Id.* ¶ 40. Plaintiff was subsequently found not guilty of both charges.[2] *Id.* ¶ 45.

On October 29, 2012, Plaintiff was served with a third Notice of Proposed Adverse Action. *Id.* ¶ 46. Plaintiff alleges that in June 2012, he sent three e-mail comments to a newspaper article website regarding matters of public interest between MPD and the Police Union. *Id.* Plaintiff's Complaint does not provide any additional information regarding the subject matter of these articles or these comments. Plaintiff alleges that the head of the Police Union investigated the e-mail comments, determined that they were sent by Plaintiff, and complained to MPD and IAD. *Id.* Although IAD determined that Plaintiff had not violated any laws, rules or regulations, and that his comments were in the public domain and not actionable, IAD charged Plaintiff with posting comments while on duty. *Id.* The allegations of "prejudicial conduct" against Plaintiff were sustained and Plaintiff's appeal to the Chief of Police was denied. *Id.* ¶¶ 48-49. However, the Chief of Police did reduce Plaintiff's punishment from a 15-day suspension to a letter of prejudice. *Id.* ¶ 49.

### B. Procedural History

Plaintiff initially filed suit in the Superior Court of the District of Columbia against the District of Columbia and various MPD members involved in the investigation and disciplinary proceedings against him. Specifically, Plaintiff sued MPD Chief of Police Lanier, Assistant Chief of Police and Head of the Internal Affairs Bureau Anzallo, Cmdr. Lojacono, Capt.

---

[2] The first charge was initially sustained by Defendant Diana Haines-Walton, an MPD Human Resources Officer, but was overturned on appeal when it was determined that Haines-Walton had intended to find Plaintiff not guilty and that her finding of guilt was a typographical error. *Id*. ¶ 45.

Christopher Cummings, Capt. Lyons, Sgt. Wagner, Lt. Golway, Agent Leon Epps, Inspector Michael Eldridge, and Human Resources Director Diana Haines-Walton. Plaintiff's Complaint alleges violations of the District of Columbia Whistleblower Protection Act ("WPA"), D.C. Code §§ 1-615.51 *et seq.*, and the First Amendment. First, Plaintiff argues that Defendants violated the WPA and the First Amendment by issuing disciplinary charges against him for reporting the disclosure of the Internal Affairs report to individuals outside of IAD, as well as for reporting the perceived inaccuracies and procedural errors in this report. Second, Plaintiff contends that Defendants violated his First Amendment rights by disciplining him for comments made on a newspaper website.

Defendants District of Columbia, Lanier, Anzallo, Lojacono, Golway, Epps, and Haines-Walton subsequently removed this action to this Court, pursuant to 28 U.S.C. § 1441, based on Plaintiff's federal law claims under the First Amendment. *See* Joint Notice of Removal, ECF No. [1]. In response, Plaintiff filed a Motion to Remand, arguing that removal was improper because (1) not all Defendants had consented to removal, and (2) the federal question raised by Plaintiff's First Amendment claims is not, in Plaintiff's words, "an essential or even substantial element of [P]laintiff's cause of action." Pl.'s Mot. at 2-4. In their Opposition to Plaintiff's Motion, Defendants indicated that they did not have the consent of all Defendants at the time of removal because not all Defendants had been served at this point. Defs.' Opp'n at 1. They further indicated that upon receiving service, all Defendants had consented to the removal, mooting Plaintiff's first argument for remand. *Id.*

Defendants subsequently filed their [9] Motion to Dismiss, arguing that all of Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has

since filed an Opposition and Defendants have filed a reply. Accordingly, both motions are ripe for review.

## II. LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) requires that a complaint contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C. 1994). Further, the Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of

public record. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). "This includes documents . . . that are referred to in the complaint and [] central to the plaintiff's claim." *Long v. Safeway, Inc.*, 842 F.Supp.2d 141, 144 (D.D.C. 2012) (internal alteration and citation omitted)

### III. DISCUSSION

#### A. Plaintiff's First Amendment Claims

Plaintiff raises two claims under the First Amendment. First, he argues that his First Amendment rights were violated when he was disciplined for his e-mails to the Chief of Police and other members of the MPD hierarchy. Second, Plaintiff contends that Defendants infringed his First Amendment rights by sanctioning him in response to his comments on a newspaper website. The Court addresses each of these claims below.

##### 1. E-mails to MPD Officials

The District of Columbia Circuit uses a four-part test to assess whether retaliation against a government employee for his or her speech violates the First Amendment:

> First, the public employee must have spoken as a citizen on a matter of public concern. Second, the court must consider whether the governmental interest in promoting the efficiency of the public services it performs through its employees outweighs the employee's interest, as a citizen, in commenting upon matters of public concern. Third, the employee must show that her speech was a substantial or motivating factor in prompting the retaliatory or punitive act. Finally, the employee must refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech.

*Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007) (internal quotations, citations, and alterations omitted). Defendants raise two arguments as to why Plaintiff's e-mails complaining about the IAD report do not meet the first prong of this test. First, Defendants argue that Plaintiff's speech cannot be "fairly characterized as constituting speech on a matter of public concern." *Rankin v. McPherson*, 483 U.S. 378, 384 (1987) (internal citation omitted). Second,

8

Defendants argue that Plaintiff did not speak as a citizen because the speech at issue was made pursuant to his official duties, and "the First Amendment places no restrictions on the government's right to punish employees for speech made 'pursuant to their official duties.'" *Thompson v. Dist. of Columbia*, 530 F.3d 914, 916 (D.C. Cir. 2008) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). The Court finds Defendants' first argument persuasive and thus has no occasion to address Defendants' second argument for dismissal of this claim.

"Whether speech involves a matter of public concern is a question of law . . . ." *LeFande v. Dist. of Columbia*, 613 F.3d 1155, 1159 (D.C. Cir. 2010). The Court's "analysis must take into account 'the content, form, and context' of the employee's speech, 'as revealed by the whole record.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). The D.C. Circuit has summarized the boundaries of "public concern" as follows:

> Speech by public employees may be characterized as not of "public concern" when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies. On the other hand, speech that concerns "issues about which information is needed or appropriate to enable members of society" to make informed decisions about the operation of their government merits the highest degree of first amendment protection.

*Hall v. Ford*, 856 F.2d 255, 259 (D.C. Cir. 1988) (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)). "In other words, 'speech relates to a matter of public concern' if it is 'of political, social, or other concern to the community.'" *LeFande*, 613 F.3d at 1159 (quoting *Hall*, 856 F.2d at 259).

In past cases, both the Supreme Court and the D.C. Circuit have made clear that speech regarding individualized personnel disputes and grievances does not rise to the level of speech on a matter of public concern. For example, in *Murray v. Gardner*, 741 F.2d 434, 438 (D.C. Cir. 1984), the D.C. Circuit concluded that the FBI's practice of furloughing agents by lottery was

9

not a matter of public concern. Rather, the employee's speech consisted of "the quintessential employee beef: management has acted incompetently." *Id.* Similarly, in *Barnes v. Small*, 840 F.2d 972, 982-83 (D.C. Cir. 1988), the court concluded that alleged assaults and false statements within the Army's Military Traffic Management Command were not matters of public concern. Instead, the plaintiff employee's speech "addressed only the misbehavior of other employees in his office, and not matters relating to any broader public interest." *Id.* at 982. In addition, in *Connick*, 461 U.S. at 148, the Supreme Court held that the "confidence and trust" employees of a district attorney's office had in their supervisors, "the level of office morale" and "the need for a grievance committee" were not matters of public concern. *See also Coleman v. Dist. of Columbia*, 893 F.Supp.2d 84, 97 (D.D.C. 2012) ("plaintiff's internal memoranda protesting the imposition of the fitness for duty evaluation . . . is a purely internal FEMS dispute, not of public concern but is merely the 'quintessential employee beef,' that her manager has acted incompetently or unfairly in her case.") (quoting *Murray*, 741 F.2d at 438).

By contrast, speech that does address a matter of public concern rises above individual personnel disputes and grievances and is relevant to the public's evaluation of the performance of governmental agencies. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 569, 571 (1968) (holding that a "difference of opinion" concerning "the preferable manner of operating the school system" is a matter of public concern, as it related to the school board's allocation of funds between education and athletic programs and the "methods of informing, or preventing the informing of, the district's taxpayers" about the reasons additional funds were needed); *Connick*, 461 U.S. at 149 (concluding that whether assistant district attorneys "feel pressured to work in political campaigns on behalf of office supported candidates" is a matter of public concern); *Hall*, 856 F.2d at 259 (holding that whether a public university's "administration [wa]s

mismanaging the athletic program" and the "structure of academic and athletic programs" generally were matters of public concern); *O'Donnell v. Barry*, 148 F.3d 1126, 1133-34 (D.C. Cir. 1998) (recognizing as a public concern "important issues of Police Department policy," including "how to rank the Department's law-enforcement priorities," "how to reform the operations of the Property Division," "what priority to give an investigation of over a hundred unsolved murders," the impairment of "the effectiveness of the Homicide Branch" and the Chief of Police's "fitness for office").

Analyzing the factual circumstances of the speech at issue, the Court finds that Plaintiff's e-mails to the Chief of Police and various members of the MPD chain-of-command do not constitute speech on a matter of public concern. Plaintiff objected to the procedures of the IAD investigation of his alleged intimidation of a witness, specifically the disclosure of the IAD report to individuals outside of IAD and the lack of evidence for the report's findings. Plaintiff's speech appears to represent a specific personnel grievance, objecting to the manner in which disciplinary proceedings against him were conducted. His e-mails, at least as described in the Complaint, represent "the kind of grievance that, while significant to [his] own career and future in the department, 'would be of no relevance to the public's evaluation of the performance of governmental agencies.'" *Coleman*, 893 F.Supp.2d at 97 (quoting *LeFande*, 613 F.3d at 1159). Indeed, objecting to errors and perceived overreaching by Capt. Lyons and Sgt. Wagner in preparing and disclosing the report, Plaintiff's complaints in the e-mails would appear to represent "the 'quintessential employee beef,' that [his] manager[s] ha[ve] acted incompetently or unfairly in [his] case." *Id.* (quoting *Murray*, 741 F.2d at 438). "[C]omplaints about inferior or superior officer[s'] incompetence . . . 'address only the misbehavior of other employees in the office,' not any matter of public concern." *Id.* (quoting *Barnes*, 840 F.2d at 982) (internal

alterations omitted). Moreover, even viewed generously, Plaintiff's allegations pale in comparison to the speech recognized in previous cases as addressing a matter of public concern, which clearly extended beyond personal employment disputes to issues of "political, social, or other concern to the community." *Hall*, 856 F.2d at 259.

To be sure, the mere fact that Plaintiff's e-mails concern a personnel issue does not doom his First Amendment claim, as employee speech on personnel issues is not per se unprotected by the First Amendment. In *LeFande*, the D.C. Circuit "reject[ed] the proposition that a personnel matter per se cannot be a matter of public concern, even if it may seriously affect the public welfare." 613 F.3d at 1161. Yet the facts of this case are readily distinguishable from *LeFande*. There, the plaintiff criticized a General Order and emergency rulemaking issued by the Chief of the MPD which, among other things, empowered the Chief of Police to fire any member of MPD's Reserve Corps without process. *Id.* at 1160. Lefande objected, arguing that by asserting the power to fire Reserve Corps members without cause, and by restricting other aspects of the Corps' authority and access to training, the Chief of Police substantially altered the rights and the role of the *entire* Reserve Corps. *Id.* The D.C. Circuit concluded that "LeFande's speech was more than a personal grievance; it was a challenge to the implementation, without notice, of the framework by which the Reserve Corps was to be governed." *Id.* at 1162. "It exceeds 'individual personnel disputes and grievances' and involves 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'" *Id.* at 1161 (quoting *Hall*, 856 F.2d at 259). *LeFande* thus affirmed the principle that an individualized personnel dispute or grievance is not a matter of public concern. Here, unlike *LeFande*, Plaintiff was not speaking out against a generally applicable MPD personnel policy, but rather was objecting to what he perceived as the

12

mishandling of his own disciplinary proceedings. Based on the well-established case law of the Supreme Court and the D.C. Circuit, speech regarding a specific personnel dispute does not generally merit First Amendment protection.

Plaintiff does not respond in substance to Defendants' argument that his e-mails to members of the MPD hierarchy do not address a matter of public concern. Indeed, the closest Plaintiff comes to rebutting Defendants' contention is in arguing that he has met the *second* prong of the *Wilburn* test, which requires a balancing of the governmental interest in promoting the efficiency of the public services it performs against the employee's interest, as a citizen, in commenting upon matters of public concern. Pl.'s Opp'n Mem. at 32. In this section of his Opposition, Plaintiff argues that his speech related to a matter of public concern because "[t]o allow IAD, through its investigative and disciplinary authority, the ability to strike out at MPD members who report misconduct by IAD would have a chilling effect on the Department as a whole." *Id.* Plaintiff contends that this is "an issue which effects [sic] the public and the perception of whether the Chief and other senior MPD officials competently and honestly manage the Department." *Id.* Yet Plaintiff mischaracterizes the nature of his speech. As described in his Complaint, his e-mails nowhere address retribution by IAD for reporting misconduct. Such retribution was an alleged *consequence* of Plaintiff's speech, not the *content* of his speech. Rather, Plaintiff's Complaint describes the content of the e-mails as "alleg[ing] that the release of the confidential IAD [report] to Capt. Lyons as well as the allegation of misconduct against the three lieutenants solely based upon the incomplete hearsay information in the [report], constituted misconduct by IAD." Compl. ¶ 33. Plaintiff's e-mails were not challenging a practice of retribution by IAD officials. Nor was he even challenging a *general* pattern of misconduct by MPD officials in conducting IAD investigations, akin to the larger

departmental policy changes challenged in *LeFande.* Rather, as his Complaint makes clear, Plaintiff was expressing a grievance regarding the mishandling of his own disciplinary proceedings. Even reading Plaintiff's argument generously, and understanding him to say that these errors could affect the public's perception of MPD and its internal disciplinary procedures, the Court still would not find for Plaintiff. Such a conclusion would set an extremely low bar for speech on a matter of public concern, contrary to Supreme Court and D.C. Circuit precedent. "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a constitutional case." *Connick*, 461 U.S. at 149.

Moreover, in making the arguments discussed here, Plaintiff provides no citation to case law, and does not respond to, much less refute, Defendants' citations suggesting that this case fits comfortably within the line of precedent distinguishing between individualized personnel grievances and matters of public concern. *See* Defs.' MTD at 12. Indeed, aside from the red herring discussed above – that his speech addressed retribution by IAD – Plaintiff never explains how his e-mail objections rise above the level of a "'quintessential employee beef,' that [his] manager[s] ha[ve] acted incompetently or unfairly in h[is] case." *Coleman*, 89 F.Supp.2d at 97 (quoting *Murray*, 741 F.2d at 438). Accordingly, the Court does not find that Plaintiff's allegations of procedural missteps in a single IAD investigation constitute information which "is needed or appropriate to enable members of society to make informed decisions about the operation of their government." *Hall*, 856 F.2d at 259. Plaintiff's First Amendment claim relating to his e-mails to various members of the MPD hierarchy is therefore dismissed.

### 2. Comments on Newspaper Website

Plaintiff also challenges Defendants' disciplinary action in response to Plaintiff's "sen[ding] three email comments to a newspaper article website regarding matters of public interest between MPD and the Police Union." Compl. ¶ 46. *See also id.* ¶ 58 (alleging that "the disciplinary actions taken by the defendants in response to plaintiff's communications . . . to the newspaper website regarding the Police Union and MPD constituted a violation of plaintiff's First Amendment right to freedom of speech."). As discussed, in order for speech by a public employee to enjoy the protection of the First Amendment, it must be "fairly characterized as constituting speech on a matter of public concern." *Rankin*, 483 U.S. at 384 (internal citation omitted). Defendants argue, and the Court agrees, that Plaintiff's Complaint fails to include sufficient detail to meet this requirement. Plaintiff's Complaint provides almost no explanation of the comments made by Plaintiff other than to offer the legal conclusion that they were "regarding matters of public interest." *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Further, Plaintiff's description of the matter as being between "MPD and the Police Union" provides no context for the Court to determine if the comments related to a matter of public concern. The two sentences quoted above constitute *the entirety* of the Complaint's description of the content of the allegedly protected disclosure. By simply stating that the statements at issue related to matters of "public interest", the Complaint consists of conclusory allegations that merely recite elements of the applicable test. Such allegations are plainly insufficient to survive Defendants' motion pursuant to Rule 12(b)(6). *Iqbal*, 556 U.S. at 681 (finding that "bare assertions" "amount[ing] to nothing more than a 'formulaic recitation of the elements' of a constitutional

discrimination claim" were insufficient to survive motion to dismiss) (quoting *Twombly*, 550 U.S. at 555).

Perhaps recognizing the insufficiency of his Complaint, Plaintiff uses his Opposition to provide additional allegations to support his claim, presenting additional detail about the comments and the articles they were associated with. Among other things, Plaintiff's Opposition informs the Court that one article was published on the Washington City Paper website and focused on a double standard in overpayment policy to MPD employees. Pl.'s Opp'n Mem. at 28. The other article appeared on the Washington Examiner website and discussed the discrepancy in salaries between the Chief of Police and MPD rank-and-file officers. *Id.* Yet such factual allegations, included for the first time in an opposition to a motion to dismiss, cannot save Plaintiff's Complaint. *See Jefferies v. District of Columbia*, 917 F.Supp.2d 10, 56 (D.D.C. 2013) ("the Court looks at what the Complaint alleges District officials actually did – apart from the gloss the plaintiff puts on those acts."). "[P]laintiff failed to include these allegations in [his] complaint, and plaintiff may not amend [his] complaint by the briefs in opposition to a motion to dismiss." *Middlebrooks v. Godwin Corp.*, 722 F.Supp.2d 82, 87 n. 4 (D.D.C. 2010). *See also Perkins v. Vance-Cooks*, 886 F.Supp.2d 22, 29 n. 5 (D.D.C. 2012) ("It is settled law in this circuit that a plaintiff may not raise new allegations in this manner."); *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F.Supp.2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation marks omitted).

However, since dismissal of Plaintiff's First Amendment claim is due to inadequate pleading rather than a substantive defect in his claim, dismissal with prejudice would be

inappropriate here. Accordingly, Plaintiff's First Amendment claim relating to his comments on a newspaper website is dismissed without prejudice.

### B. Plaintiff's Motion to Remand

In light of the dismissal of Plaintiff's First Amendment claims, the only remaining count in this action is Plaintiff's WPA claim. Defendants premised their removal of this action, and their Opposition to Plaintiff's Motion to Remand, on the presence of Plaintiff's First Amendment claims, which raised a federal question. *See* Defs.' Opp'n at 2-3. In the absence of these claims, there is no longer a federal claim, as Plaintiff's WPA claim arises under District of Columbia law. Because Plaintiff has not pled diversity jurisdiction under 28 U.S.C. § 1332, *see Dist. of Columbia ex rel. Amer. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1043-44 (D.C. Cir. 1986) (noting that the plaintiff bears burden of pleading jurisdiction), the only available basis for federal subject matter jurisdiction over Plaintiff's remaining claim is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

However, the Court concludes that remand to the Superior Court of the District of Columbia, rather than the exercise of supplemental jurisdiction, is appropriate. First, and most importantly, Plaintiff explicitly seeks the remand of this action to the Superior Court of the District of Columbia. Second, "in the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendant jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). Accordingly, the Court grants Plaintiff's Motion to Remand and remands this matter to the Superior Court of the District of Columbia.

In reaching this conclusion, the Court is mindful that Plaintiff's First Amendment claim based on his comments on a newspaper website is only dismissed without prejudice. Should Plaintiff amend his Complaint and restore this claim with additional allegations lacking in his present Complaint, there would again be a federal question in this case, and Defendants would again have the option of removal. However, the Court will not presume to make this decision for Plaintiff. Plaintiff's Motion to Remand appears to indicate that he views his First Amendment claims as a secondary portion of his case. Arguing for remand *despite* the presence of the First Amendment claims in his Complaint, Plaintiff states "the federal question raised is not an essential or even substantial element of [P]laintiff's cause of action." Pl.'s Mot. at 3. Plaintiff suggests that he views the First Amendment claims as ancillary to his WPA claim, noting "Plaintiff's alleged deprivation of his First Amendment rights is not the basis of [P]laintiff's claim. The basis of his claim is a violation of the District of Columbia WPA." *Id. See also id.* at 4 ("Plaintiff's cause of action arises under D.C. law and the collateral First Amendment issue is not a necessary element of the D.C. WPA claims."); *id.* ("[T]he Superior Court of the District of Columbia has a much greater interest in determining the merits of this case under the D.C. WPA and is wholly capable of deciding the collateral First Amendment violation."). While Plaintiff's arguments for remand are legally incorrect, *see City of Chicago v. Int'l College of Surgeons*, 522 U.S, 156, 164 (1997) ("By raising several claims that arise under federal law, [plaintiff] subjected itself to the possibility that the City would remove the case to the federal courts"), they do reveal a strong preference for litigating this action – and specifically Plaintiff's WPA claim – in the Superior Court of the District of Columbia. Accordingly, the Court will leave to Plaintiff a decision about whether to reassert his First Amendment claim and provide a basis for removal to this Court, or leave this claim dismissed and remain in the Superior Court of

the District of Columbia.[3] *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 399 (1990) ("the plaintiff has chosen to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option.").

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's First Amendment claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), and Defendants' [9] Motion to Dismiss is GRANTED IN PART. Plaintiff's First Amendment claim premised on his e-mails to various members of the MPD chain-of-command is DISMISSED WITH PREJUDICE as these e-mails do not address a matter of public concern. Plaintiff's First Amendment claim premised on his comments on a newspaper website are DISMISSED WITHOUT PREJUDICE as Plaintiff's present Complaint, devoid of the gloss provided by Plaintiff's Opposition to Motion to Dismiss, is insufficient to withstand Defendants' Motion to Dismiss. Given these rulings, there is no longer a federal question in this case. Accordingly, in light of Plaintiff's stated desire to return to the Superior Court of the District of Columbia, this Court GRANTS Plaintiff's [6] Motion Under 28 U.S.C. § 1447(c) to Remand Case Back to the Superior Court of the District of Columbia. This case is remanded to the Superior Court of the District of Columbia pursuant to 28 U.S.C. § 1447(c). The Court leaves the portion of Defendants' [9] Motion to Dismiss addressing Plaintiff's WPA claim to be decided by the Superior Court Judge to whom this case is assigned. An appropriate Order accompanies this Memorandum Opinion.

     /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[3] In light of its decision to remand the remainder of Plaintiff's case to the Superior Court of the District of Columbia, the Court takes no position on the merits of Plaintiff's WPA claim, leaving a decision on this issue to the Superior Court Judge to whom this case is assigned.